UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrew S. Cwik,
    Plaintiff

vs

Cynthia L. Dillon, et. al.,
    Defendants

Case No. C-1-09-669
(Spiegel, J.)
(Hogan, M.J.)

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 5), Plaintiff's Response to Defendants' Motion to Dismiss (Doc. 6), and Defendants' Reply thereto (Doc. 7).

### BACKGROUND

Plaintiff, acting pro se, brings this action alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. (Doc. 3). Plaintiff claims appear to arise out of two separate incidents between Plaintiff and employees of Cincinnati Public Schools ("CPS") in the early fall of 2007. (Doc. 3, at ¶¶31-45). Plaintiff alleges that Defendants[1] engaged in a concerted effort to interfere with his fundamental right to participate in the upbringing and education of his children in violation of his rights to due process and equal protection under the Fourteenth Amendment to the U.S. Constitution. (Id. at ¶¶ 46, 50, 54).

The first incident giving rise to Plaintiff's claims occurred on August 27, 2007. (Doc. 3, at ¶¶31-36). Plaintiff claims that he arrived at Riverview East Academy at 2:00 p.m. to pick up his children, having been informed by the school that dismissal was at such time. (Id. at ¶¶31-32). When he arrived at the school he was "ordered by an armed guard" to wait in the school office. (Id.). Plaintiff alleges that, at 2:15 p.m., he told the school secretary he "was going to see if he could locate his children and leave the premises." (Id. at ¶ 32). In response, the school secretary allegedly directed Plaintiff to Principal Eugene Smith's office in the rear of the school. (Id. at ¶ 32). Plaintiff claims that Principal Smith "berated" him for arriving early and attempting

---

[1] There is some confusion as to whether the Board of Education of the City School District of the City of Cincinnati, incorrectly identified as Cincinnati Public Schools. However, it appears that, in identifying the named Defendants in his Complaint, Plaintiff made reference to "Cynthia L. Dillon,...and Cincinnati Public Schools," as well "Eugene Smith,...and Riverview East Academy." (Doc. 3)

to leave the school office.  (Id. at ¶ 33).  Plaintiff further contends that he was told by Smith, as well as the armed guard who was present, that he was not permitted to leave the school office. (Id.).  During this time, the children's mother retrieved the children and took them home.  (Id. at ¶ 34).  It's Plaintiff's belief that Smith "detained" him in his office "to insure that [the children's] mother would retain physical possession of them, thereby making it more likely that they would remain enrolled at Riverview East Academy."  (Id. at ¶ 34).  Plaintiff "believes" that Smith's actions on that day "were designed to prevent [P]laintiff from getting access to this children and to aid the children's mother in her custody dispute with [P]laintiff."  (Id. at ¶ 35).  There is no mention of any wrongdoing on the parts of Defendants Dillon, Johnson, Doyle or CPS with respect to the August 27, 2007 incident.  Plaintiff alleges that this incident caused him "extreme stress, physical effects, migraines, insomnia, embarrassment, and humiliation and contributed to Plaintiff's loss of custody of his minor children."  (Id. at ¶ 36).

The second incident giving rise to Plaintiff's claims occurred on September 11, 2007. (Id. at ¶¶ 37-39).  On this date, Plaintiff was allegedly called by Defendant, Vice Principal Sherry Johnson, and informed that "he would not be allowed to retrieve [his children] from school unless he was accompanied by their mother.[2]"  (Id. at ¶ 37).  Plaintiff then alleges that his attorney, Aimee Keller, contacted Defendant Smith on his behalf.  Plaintiff claims that, "[a]fter a heated exchange between Smith and Keller in which Smith indicated a strong preference for [the children's] mother gaining sole custody of them, Smith relented and indicated that the Plaintiff could come to school and retrieve his children."  (Id. at ¶ 38).  Plaintiff alleges that he then arrived at school to retrieve his children and was informed that the children's mother had already retrieved them.  (Id. at ¶ 39).  Plaintiff further contends that he "later learned" that Defendant Smith allowed Plaintiff's wife "to occupy a restricted area directly outside [his daughter's] classroom so that the mother could quickly remove [his children] from the school in the event the Plaintiff arrived to retrieve his children."  (Id. at ¶ 39).

Plaintiff alleges that Defendant Dillon contacted another attorney at Plaintiff's attorney's firm with the intent to intimidate Plaintiff and his attorney.  (Id. at ¶ 40).  Plaintiff claims that his attorney received a phone call from Dillon in which Dillon related to the attorney that she had issued a stay-away letter to Plaintiff.  The letter reads as follows:

Dear Mr. Cwick:

I have been informed that you have engaged in aggressive behavior and attempted to conceal yourself and not leave Riverview East.  Your presence and communications were disruptive

You are not permitted to enter or remain upon school grounds or premises, unless specific authorization has been granted by the Principal for such purposes as are consistent with the proper operation of the school and in conformation with the

---

[2] The alleged phone call from Defendant Johnson constitutes the sole factual allegation pertaining to her in Plaintiff's Complaint.

2

laws of Ohio and policies of the Board of Education.

Your presence upon school grounds or premises other than in conformance with the provisions of this letter shall constitute a trespass and shall be subject to prosecution.

Should you have any questions, please contact me.

Thank you for your cooperation.

> Sincerely,
> Cynthia L. Dillon
> General Counsel

(Doc. 3, Exhibit A).

Nonetheless, Plaintiff states that he went onto school grounds, attended many functions and was never asked to leave school grounds on any occasion. (Id. at ¶ 44). Plaintiff believes that the letter from Dillon was used to influence a custody battle between him and his wife. (Id. at ¶¶ 44-45). Plaintiff asserts that his attempt to pick up his children and being advised that their mother had already picked them up caused him "extreme stress and physical effects, including migraine headaches, nausea, insomnia, and anxiety as well as contributing to the Plaintiff's loss of custody of his minor children." (Id. at ¶ 45).

## OPINION

Fed. R. Civ. P. 8(a)(2) requires that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to both "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 555, 570; *Ashcroft v. Iqbal* __ U.S. __, 129 S. Ct.1937, 1949-50 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Iqbal*, 129 S. Ct. at 1949). Although the court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citing *Twombly*, 550 U.S. at 555) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Iqbal*, 129 S. Ct. at 1949).

Plaintiff's claims are brought pursuant to 42 U.S.C. §1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any

State, . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Thus, "in any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *see also McQueen v. Beecher Community School*, 433 F.3d 460, 463 (6th Cir. 2006). The threshold inquiry is whether the plaintiff was deprived of a constitutional right. Once this question is answered, the inquiry becomes whether the defendants are responsible for that deprivation. *Doe v. Claiborne County*, 103 F.3d 495, 505-506 (6th Cir. 1996). "For liability to attach, both questions must be answered in the affirmative." *Id*.

In Count One, Plaintiff asserts that the "conduct of Defendants in preventing Plaintiff from participating in the education of his children" deprived Plaintiff of his "fundamental right to participate in the up-bringing and education of his children." (Doc. 3). The Fourteenth Amendment to the United States Constitution provides, in part, that a state may not deprive any person of life, liberty or property without due process of law. U.S. CONST.AMEND.XIV, §1. It is well settled that,

> "The touchstone of due process is protection of the individual against arbitrary action of the government," *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974), whether the fault lies in a denial of fundamental procedural fairness, *see, e.g., Fuentes v. Shevin,* 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see, e.g., Daniels v. Williams*, 474 U.S. 327, 331 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised).

*County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). The Supreme Court further elaborated that "for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id.* at 846. While "the 'shocks the conscience" standard is no 'calibrated yard stick,' at a minimum, the standard requires a showing beyond mere negligence." *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *Lewis*, 523 U.S. at 847 and *Daniels,* 474 U.S. at 332).

In the present case, the factual allegations of Plaintiff's Complaint do not rise to such a level as to shock the conscience. Plaintiff alleges no conduct on the part of Defendants which indicates an intention to cause injury to Plaintiff. The crux of Plaintiff's allegations concern his inability to pick up his children from school on two particular days on which his wife had already done so. It is well established that the right of a parent to make decisions regarding the care,

4

custody and control of their children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399-401 (1923) ("The liberty protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.'")). Nonetheless, it is equally well established that this right is not without limits. *Blau v. Fort Thomas Public School District*, 401 F.3d 381 (6th Cir. 2004) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest ...of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court.")). As the Sixth Circuit points out,

> The critical point is this: [w]hile parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

*Blau*, 401 F.3d at 395-96 (quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975); *see also Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir.2001) ("While [p]arents may have a fundamental right in the upbringing and education of their children, this right does not cover the [p]arent's objection to a public school Uniform Policy."); *see also Leebaert v. Harrington*, 332 F.3d 134, 142 (2d Cir.2003) (The fundamental right to control the upbringing and education of one's child does not include "the right to tell public schools what to teach or what not to teach him or her."); *Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 699 (10th Cir.1998) (parents do not have a fundamental right to send their child to school part-time only and pick and choose the classes she takes); *Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 176 (4th Cir.1996) (requirement that high school students perform community service in order to graduate does not violate parents' right to control education of their children); *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 462 (2d Cir.1996) (applying rational-basis review to determine that high school could require community service before graduation); *Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 533 (1st Cir.1995) (parents' fundamental right to control a child's education does not include the right to control curriculum at their child's public school); *Kite v. Marshall*, 661 F.2d 1027, 1029 (5th Cir.1981) (parents have no fundamental right to send their children to summer athletic camp against school regulation prohibiting such camps).

Under the Ohio Revised Code, local school boards are responsible for "managing the myriad of day-to-day problems that typically surface in the operation of a public school system." *Coles v. Cleveland Board of Education*, 171 F.3d 369, 371 (6th Cir. 1999); *see* O.R.C. § 3313.47. Among these problems is the issue concerning the entrance upon school grounds or property of persons other than students and school employees. For this reason, the Ohio Revised Code set forth that, "the board of education of a school district or the governing board of an educational service center shall make any rules that are necessary for its government and the government of

5

its employees, pupils of its schools, and all other persons entering upon its school grounds or premises." O.R.C. §3313.20(A).

In support of their argument, Defendants cite to two decisions wherein courts held that parents do not have a constitutional right to attend school activities or to be present on school property. *Nichols v. Western Local Board of Education*, 805 N.E.2d 206 (Pike Cty Ct. Com. Pl. Nov. 24, 2003); *Mejia v. Holt Public Schools*, No. 5:01-CV-116, 2002 WL 1492205 (W.D.Mich. Mar. 12, 2002). In *Nichols*, the court examined the issues of whether parents of students in Ohio have a constitutional liberty interest to attend school activities and be present on school property and whether a board of education in Ohio may exclude persons, including parents of students, from school activities and property without formal rules and a due process hearing. *Id.* at 210. In that case, the mother of a middle school student was banned from school activities and therefore from school property due to a verbal altercation with her child's coach. The mother filed an administrative appeal under O.R.C. §2506.01 from the decision of the board of education which upheld the ban. The court held that "although the education and upbringing of one's children is a recognized liberty interest under the Constitution, this does not create a constitutional right for a parent to attend school activities or to be present on school property.'" *Id.* at * 211. In *Mejia,* upon which the *Nichols* court relied, a parent was barred from school grounds after the school received reports that the parent had masturbated in his car while waiting to pick up his child. 2002 WL 1492205 at *1. In *Mejia*, the court held that the right to direct and control the education of one's child as mentioned in *Troxel*, 530 U.S. at 65, does not include the right to enter onto school property, "even if doing so is necessary to participate in the child's education." *Id.* at *5. The court further distinguished two Supreme Court cases, *Meyer v. Nebraska* and *Pierce v. Society of the Sisters*, 268 U.S. 510 (1925)[3], stating that those cases upheld parents' right "to direct and control the education of their children by making the decision about where their children will be educated" and did "not extend or create a right of parents to go onto school property for purposes of participating in the child's education. The right of a parent to direct his child's education is 'limited in scope.'" *Id.* at *6 (quoting *Swanson*,135 F.3d at 699).

As Defendants concede, *Mejia* and *Nichols* are not controlling authority upon this Court. Nonetheless, we find these decisions to be more than persuasive and find that Plaintiff's liberty interest in directing the education of his children does not extend to a constitutional right to unlimited admittance into or onto the building or grounds of his children's school. Hence, being questioned by school officials and prevented from removing his children early from school does not infringe upon Plaintiff's liberty interest in participating in the education of his children.

---

[3] In *Meyer,* the Court held that a statute prohibiting teaching in foreign languages to children who had not completed the eighth grade unconstitutionally infringed parents' right to control their children's education by choosing their teacher. 262 U.S. at 400-401. Likewise in *Pierce*, the Court found an Oregon statute requiring all children between the ages of 8 and 16 years to attend a public school to be unconstitutional because it "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control." 268 U.S. at 534-35.

In Count Two, Plaintiff also alleges that Defendants violated his procedural due process rights by infringing upon his fundamental right to participate in the education of his children without notice and a hearing. The Fourteenth Amendment to the United States constitution provides, in part, that a state may not deprive any person of life, liberty or property without due process of law. Protectable liberty interests may spring directly from the Due Process Clause or from state law. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). "This Court has analyzed section 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process." *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 762 (6th Cir. 2005)(quoting *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1473-74 (6th Cir.1993)). To demonstrate a claim for a violation of procedural due process, a plaintiff must establish a constitutionally protected property or liberty interest which was then deprived without appropriate process. *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir.1995)). There are two elements to procedural due process claims. "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." *Id.* (quoting *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir.2002)).

Because Plaintiff's procedural due process claim is premised upon his claim that being permitted unlimited access to his children's school grounds is included in his fundamental right to participate in his children's education, summary judgment is appropriate in Defendants' favor. As the Court stated above, the Constitution does not afford Plaintiff's the substantive due process right they claim. Therefore Defendants have the right to exclude Plaintiff from school grounds, or, as in Plaintiff's case, to require prior authorization, no due process hearing is mandated. For this reason, the allegations of Plaintiff's Complaint are insufficient to establish a procedural due process claim.

In Count Three of Plaintiff's Complaint, Plaintiff asserts a claim under the Fourteenth Amendment's Equal Protection Clause arguing that Defendants, while preventing him from participating in his children's education, treated him differently than others "in a situation similar to that of plaintiff." (Doc. 3, ¶ 54). Plaintiff's allegations are insufficient to constitute an equal protection claim under a "class of one" theory. To establish a claim under this theory, a plaintiff must: (1) show that he was "intentionally treated differently from others similarly situated," with "no rational basis for the difference in treatment," and (2) establish "facts sufficient to overcome the presumption of rationality that applies to government classifications." *Rennick v. City of Cincinnati*, No. 1:06cv580, 2009 WL 2827944 at *2 (S.D. Ohio Sept. 2, 2009)(citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Wroblewski v. City of Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992)). Plaintiff has failed to establish an equal protection claim under this theory because, as defendants correctly argue, he does not allege facts sufficient to establish that "he was the victim of irrational, unconstitutional profiling by the government." Plaintiff has alleged no facts sufficient to show that other similarly situated individuals were treated

differently or more favorably. Indeed, Plaintiff has identified no parents who were permitted unrestricted access to school grounds following disruptive behavior on their part. As such, Plaintiff has failed to establish that Defendants discriminated against him as a "class of one."

Additionally, Plaintiff has also named the Cincinnati Public Schools, the correct designation for which is the Board of Education of the City School District of the City of Cincinnati, as Defendant in this matter. However, liability under § 1983 cannot be premised on the doctrine of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Rather, Plaintiff must show that the School Board *itself* is the wrongdoer. *Doe v. Claiborne County*, 103 F.3d at 507 (citing *Collins*, 503 U.S. at 122). Therefore, in order to state a claim against the School Board under § 1983, Plaintiff must "establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Id.* (citing *Monell*, 436 U.S. at 690-91); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Plaintiff does not allege that his constitutional deprivation resulted from an officially enacted policy. Rather he alleges that the acts of the individual defendants "represent the official policy" of the School Board. (Doc. 3, at ¶16). He identifies no officially enacted policy but argues that the individual Defendants acted under the explicit or implicit authorization of the School Board. (Doc. 3, at ¶15).

For purposes of § 1983, a "custom" is a legal institution that is permanent and established, but is not authorized by written law. *Monell*, 436 U.S. at 691. Before a custom can be the basis for a civil rights violation, the custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993). Moreover, in order to show a custom or policy, Plaintiff must adduce specific facts in support of his claim. Conclusory allegations will not lie. *Culberson v. Doan*, 125 F.Supp.2d 252, 263-64 (S.D.Ohio 2000).

In addition to showing that the School Board as an entity "caused" the constitutional violation, Plaintiff must also show a direct causal link between the custom and the constitutional deprivation; that is, he must "'show that the particular injury was incurred *because* of the execution of that policy.'" *Doe*, 103 F.3d at 508 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993) (emphasis added) (citation omitted), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994)). This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*.

As stated above, Plaintiff has failed to establish the existence of a constitutional right to unlimited access to his children's school grounds. Because Plaintiff cannot identify a constitutional right of which he was deprived by Defendants, Plaintiff cannot establish §1983 liability against the Defendant Board of Education of the City School District of the City of Cincinnati.

8

Lastly, the individual Defendants argue that they are entitled to qualified immunity from Plaintiff's §1983 claim. Public officials performing discretionary functions[4] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity insulates government officials from individual liability for money damages. *See, e.g., Cagle v. Gilley*, 957 F.2d 1347, 1350 (6th Cir. 1992).

The Supreme Court has outlined a two-step analysis for qualified immunity: first, whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and second, whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[5] In light of our finding above, that no constitutional right was violated, we find that the individual Defendants are entitled to qualified immunity with respect to Plaintiff's claims against them.

### IT IS THEREFORE RECOMMENDED THAT:

1) Defendants' Motion to Dismiss (Doc. 5) be GRANTED

2) Plaintiff's Complaint be DISMISSED and this case be TERMINATED upon the Court's docket.

3) The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997)

Date: 9/20/10

Timothy S. Hogan
United States Magistrate Judge

---

[4] "Discretionary functions," as used in evaluating claims of qualified immunity, involve "significant decision-making that entails personal deliberation, decision and judgment." *Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir. 1987). By contrast, "ministerial functions," for which there is no immunity, involve "the execution or implementation of a decision and entail only minor decision-making." *Id.*

[5] The Supreme Court has subsequently held that district courts are not bound by the "inflexible requirement" set out in *Saucier*, but rather "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ---- U.S. ---- at ----, 129 S.Ct. 808, 813 (Jan. 21, 2009). *Pearson* is not, however, necessary to our analysis in light of our finding that no constitutional violation occurred.

9

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\LES\MTNDISM\cwik.mtd.wpd

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☒ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Andrew S. Cwik<br>900 Adams Crossing<br>Suite 2300<br>Cinti., OH 45202 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number (Transfer from service label) | 7002 3150 0000 8389 8848 | |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540 |

1:09cv669 (Doc. 9)